UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br>*ex rel.* ROBERT A. GREEN, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>DR. ASAD U. QAMAR, *et al.*,<br><br>Defendants. | Civil Action No. 5:11-406-RBD-TBS |

**REPLY IN SUPPORT OF DEFENDANTS' MOTION
FOR PRELIMINARY INJUNCTION TO PRESERVE THE
<u>STATUS QUO AND ENJOIN ONGOING RETALIATION</u>**

In its Response in Opposition ("Opposition") (Dkt. 29), the government wrongly asserts that its expanded Medicare suspension authority under the Patient Protection and Affordable Care Act of 2010 ("PPACA") permits unconstitutional conduct with no judicial review. The government's theory is that courts must stand idly by when it levels allegations under the False Claims Act ("FCA"), and then relies on those very allegations to impose a retaliatory suspension – with no time limit – on the FCA defendant, undercutting its ability to defend itself. If accepted, this argument would make actual FCA litigation unnecessary.[1]

The question of whether healthcare providers have a right to judicial process in FCA

---

[1] Although no court has yet "overturned a Medicare payment suspension on a theory of constitutional retaliation" (Opp'n at 14), no court has yet opined on *any* constitutional claim related to the post-PPACA suspension regulations. When challenged, the government has lifted its suspension and avoided a potentially adverse ruling. *See* Jt. Notice of Mootness of Pl.'s Mot. for Prelim. Inj., *Vitreo Retinal Consultants of the Palm Beaches, P.A. v. Sebelius*, No. 1:13-CV-22782 (S.D. Fla. Oct. 18, 2013) (Dkt. 17) (retaliatory suspension claim mooted upon lift of suspension that was imposed for "credible allegations of fraud").

litigation, or whether they must submit to undue duress, requires judicial review. Courts must be able to protect parties from unconstitutional governmental action where no other recourse is available. To accept the government's argument would render courts equally helpless when a defendant is *explicitly* suspended in reprisal for constitutional exercise or because of race, religion, or national origin. The government's theory is simply not tenable.[2]

**I.    THE COURT HAS JURISDICTION TO ISSUE THE REQUESTED RELIEF.**

The government contends that 42 U.S.C. § 405(h) deprives this Court of jurisdiction over Defendants' retaliation claims. Section 405(h), made applicable to Medicare Part B by 42 U.S.C. § 1395ii, prohibits any "action" from being "brought" against the United States "to recover on any claim arising under" the Medicare laws. The government asserts that § 1395ii requires that "constitutional challenges stemming from Medicare determinations must be channeled through the administrative review process before they can be presented to an Article III court." (Opp'n at 5.) These provisions do not affect the Court's jurisdiction here.[3]

First, Defendants have not "brought" an "action" against the government. *Cf.* 42 U.S.C. § 405(h). Rather, in litigation that predates the suspension, they have moved the Court to exercise its "inherent authority" to curb the Plaintiff's collateral abuses of the litigation process. (*See* Mem. in Supp. of Amended Mot. for Prelim. Inj. (Dkt. 18) ("Mem.") at 13-15.) That inherent authority is "governed not by rule or statute but by the control

---

[2] The government has further retaliated by revoking each Defendant's Medicare billing privileges as of May 28, 2015. Both revocation letters allege that, *out of thousands of claims over five years,* Defendants supposedly submitted 20 claims using Medicare identification numbers for deceased beneficiaries. Those were obviously clerical mistakes (some corrected years ago), not fraud and include incorrect spousal suffixes on otherwise correct identification numbers, transposed dates, or other similar errors.

[3] *See also* 5 U.S.C. § 702 (generally waiving sovereign immunity for equitable claims).

necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Link v. Wabash R. Co.*, 370 U.S. 626, 630-31 (1962). The Opposition ignores those arguments, thus conceding them. *See, e.g.*, *Melendez v. Town of Bay Harbor Islands*, No. 14-CV-22383, 2014 WL 6682535, at *7 (S.D. Fla. Nov. 25, 2014).

Second, none of the government's cited cases analyzed its new and untested authority, created in 2010 by PPACA, to suspend Medicare payments over "credible allegations of fraud." 42 U.S.C. § 1395y(o). This is the specific authority now used against Defendants. Suspensions have long been, ostensibly, "not appealable." 42 C.F.R. 405.375(c). Then, in March 2011, CMS rewrote its regulations to define "credible allegations of fraud" as including allegations from "[p]atterns identified through . . . civil false claims cases," *id.* § 405.370(a)(3), and to let CMS impose suspensions indefinitely until the civil FCA action's "resolution," *see id.* §§ 405.370(a), 405.372(d)(3)(ii). Such an indefinite suspension is hardly "temporary." (Opp'n at 1-2, 8, 17.) The government now asserts the power to put any FCA defendant into a judicially unreviewable chokehold: the FCA suit will trigger a non-appealable Medicare suspension that need not be lifted until the FCA suit ends, forcing the defendant into settlement by depriving it of the funds to fight the FCA suit. Thus, for the first time, the Executive Branch can exercise its Medicare suspension authority to interfere with the Judiciary's ability to decide pending litigation.

Third, Defendants are not seeking "to recover on any [Medicare] claim," 42 U.S.C. § 405(h); they seek to enjoin unconstitutional action. Unlike the government's cited cases, Defendants are not "challeng[ing] . . . the constitutionality of the [Medicare] statute or the regulations interpreting it," *Cochran v. U.S. Health Care Fin. Admin.*, 291 F.3d 775, 779

(11th Cir. 2002), but rather attacking the government's *motives* in approving the suspension. Here, the suspension was a weapon of retaliation that interferes with the Court's preexisting jurisdiction. If the government is correct, suspensions can *explicitly* rely on retaliatory, racist, or other improper motives while remaining insulated from judicial review.

Fourth, even if Defendants' claim were deemed an attempt "to recover" on Medicare claims, the government wrongly insists that 42 U.S.C. § 1395ii requires additional administrative exhaustion before seeking judicial review. The suspension regulations only provide an opportunity to submit a rebuttal to the suspension. *See* 42 C.F.R. § 405.374. Defendants have already done this. Because the ostensibly non-appealable suspension can remain in force until this FCA case is resolved, and because the suspension will cripple Defendants' ability to litigate this FCA case, Defendants will never have any other opportunity to seek further administrative *or* judicial review of their constitutional claims.

A "serious constitutional question . . . would arise if [courts] construed § 1395ii to deny a judicial forum for constitutional claims arising under Part B of the Medicare program." *Bowen v. Michigan Acad. of Family Physicians*, 476 U.S. 667, 681 n.12 (1986) (quotation marks omitted). Accordingly, § 1395ii does *not* apply § 405(h)'s judicial review limitation "where its application to a particular category of cases . . . would not lead to a channeling of review through the agency, but would mean no review at all." *Shalala v. Ill. Council on Long Term Care, Inc.*, 529 U.S. 1, 17 (2000). Because the government's arguments would mean Defendants' retaliation claim would never be reviewed either administratively *or* judicially, they would "cause crucial collateral claims to be lost and . . . irreparable injuries to be suffered . . . ." *Mathews v. Eldridge*, 424 U.S. 319, 331 n.11 (1976)

(allowing judicial review before full exhaustion). Thus, those arguments should be rejected.

## II. THE COURT SHOULD ISSUE THE REQUESTED RELIEF.

The government does not dispute – and thus once again concedes – Defendants' argument that they are likely to succeed in refuting the FCA allegations. (*See* Mem. at 21-22.) The government responds only that "Defendants' attack on the FCA allegations in these papers is misplaced" at this time. (Opp'n at 12 n.3.) Yet this Court has previously granted defendants' motions for preliminary injunctions based on substantial showings that their defensive arguments had merit. *E.g.*, *World Triathlon Corp. v. SRS Sports Ctr.*, No. 8:04-CV-1594, 2005 WL 3445526, at *4 (M.D. Fla. Dec. 14, 2005).[4]

The government also fails to rebut Defendants' likelihood of success on their retaliation claim. First, the government argues it was "authorized" to suspend the Medicare payments. (*See* Opp'n at 11-13.) Whether the government *could* have suspended payment for legitimate reasons does not absolve it of issuing the suspension for unconstitutional reasons. *See Adams v. James*, 797 F. Supp. 940, 948 (M.D. Fla. 1992).

Second, instead of rebutting Defendants' ample authority establishing its protected activity (*see* Mem. at 18 & nn.15-17), the government cites conclusory *dicta* from a single unpublished memorandum disposition in another circuit to argue that "rejection of a settlement agreement [is] not an exercise of a constitutionally protected right." *Patel v. City of Long Beach*, 564 F. App'x 881, 881 (9th Cir. 2014) (rejecting retaliation claim as waived because not raised below). That *ipse dixit* is also inapposite, because the constitutional

---

[4] The merits of Defendants' FCA arguments are confirmed by Exhibit A hereto, the Declaration of Gino J. Sedillo, M.D. Dr. Sedillo is the cardiologist who, as previously noted, reviewed several patient records cited in the government's Complaint. (Mem. at 22 & n.19.)

retaliation claim in that case arose under the First Amendment, not the Fifth Amendment.

Third, the government ignores the Eleventh Circuit's recent holding that a loss of "public contracts" that causes "substantial economic harm" by threatening a business's continued existence can be "irreparable harm" for purposes of granting a preliminary injunction. *See Odebrecht Constr., Inc. v. Sec'y, Fla. Dep't of Transp.*, 715 F.3d 1268, 1288 (11th Cir. 2013). Thus, the suspension's threat to the Practice's continued existence, *inter alia*, constitutes irreparable harm (and adverse action for purposes of the retaliation claim).[5]

Fourth, it is implausible that CMS was not "aware of the status of any settlement discussions" prior to the suspension's issuance. (Opp'n at 17.) DOJ necessarily consulted with its client agency CMS during negotiations, and CMS was required to consult with DOJ "as appropriate" before issuing the suspension. *See* 42 C.F.R. §§ 405.371(a)(2), 405.372(a)(4)(i). CMS official Zabeen Chong declares that the Center for Program Integrity ("CPI") was unaware of settlement negotiations when it "notified" the CMS Administrator's office of CPI's "intent" to suspend Defendants on February 24, 2015 (*see* Opp'n, Chong Decl. ¶ 4), before the February 27 settlement impasse. But Mr. Chong also declares that this recommendation required another unspecified CMS official's "formal[] approval" before the suspension could be implemented. (*Id.* ¶ 5.) That approval was not granted until March 6. Thus, some other CMS component rather than CPI was the true decision-maker. And the

---

[5] Tellingly, the government's only cited Eleventh Circuit precedent is distinguishable because there, the plaintiff was *offered a stay of the Medicare suspension during negotiations*, but it "did not respond, instead filing for a preliminary injunction." *See V.N.A. of Greater Tift Cty., Inc. v. Heckler*, 711 F. 2d 1020, 1034 (11th Cir. 1983). That is not the case here, notwithstanding the government's disingenuous discussion of the settlement negotiations. Although it represents that discussions were "productive," the government failed to respond to Defendants' request to discuss the *merits of the allegations*. Instead, it merely asked how much Defendants would pay to settle, while declining to lift the suspension and never offering any counterproposal *less severe* than the current suspension.

unspecified approving CMS official may be the very person who consulted with DOJ during this period.  The declaration therefore does not refute that CMS approved the suspension *because of* Defendants' exercise of their rights on February 27.

Fifth, and finally, the government's assessment of the public interest rests on abstract interests in preventing Medicare fraud.  (Opp'n at 19.)  It is untethered from the specifics of this case: the harm that the Practice's closure will inflict upon its elderly patients, whose outpatient medical care will be interrupted and potentially compromised, because area hospitals will be unable to timely absorb these new patients.  Because these alternative hospital-based services cost far more, the government is inflicting added harm on the Medicare trust fund by its own hand.

## CONCLUSION

For the foregoing reasons stated herein and in the Motion, Defendants' respectfully request an order enjoining the Government from taking any action to implement or otherwise give effect to the suspension of Medicare payments to Defendants, and barring it from engaging in further unconstitutionally retaliatory action.

Dated:  May 25, 2015                           Respectfully submitted,

/s/ Gregory W. Kehoe
Gregory W. Kehoe (FBN 486140)        Kirk Ogrosky (*pro hac vice pending*)
Danielle S. Kemp (FBN 474355)         Murad Hussain (*pro hac vice pending*)
GREENBERG TRAURIG, P.A.               ARNOLD & PORTER LLP
Courthouse Plaza                                     555 Twelfth Street, NW
625 East Twiggs Street, Suite 100         Washington, DC  20004-1206
Tampa, FL 33602                                   (202) 942-5000
(813) 318-5700                                       (202) 942-5999 (facsimile)
(813) 318-5900 (facsimile)                   Kirk.Ogrosky@aporter.com
Kehoeg@gtlaw.com                              Murad.Hussain@aporter.com
Kempd@gtlaw.com

*Attorneys for Defendants*

## **CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing was served, this 25th day of May, 2015, via CM/ECF to all parties participating in CM/ECF Electronic Noticing.

/s/ Gregory W. Kehoe